IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

Charleston Division

DELBERT KEVIN CORDLE,

    Plaintiff,

v.

                                                Civil Action No. 2:25-cv-00276

CAPITAL ONE, N.A.,

    Defendant.

## COMPLAINT

In this case, which is representative of numerous others, Defendant Capital One, N.A., ("Capital One") sought to collect a debt that Plaintiff did not owe and reported on Plaintiff's credit file, which resulted in the publication of inaccurate information, including credit cards and account inquiries. This case involves Defendant's repeated insistence on inaccurately reporting Plaintiff's credit and collect a debt he did not owe. Despite requests for reinvestigation and correction by Plaintiff, Defendant failed to reasonably investigate Plaintiff's disputes and continued to inaccurately report that Plaintiff had a serious delinquency on an accounts that he had never opened. Plaintiff brings this action for actual, statutory, and punitive damages, and for costs and attorney's fees, pursuant to the Fair Credit Reporting Act and West Virginia Consumer Credit and Protection Act.

## PARTIES

1. Plaintiff Delbert Cordle ("Plaintiff" or "Mr. Cordle") is a resident of Fayette County, West Virginia, which is within the territorial confines of the Southern District of West Virginia. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

1

2. Defendant Capital One, National Association (Capital One), is a Virginia corporation registered to do business in West Virginia with its principal office address located at 1600 Capital One Drive, McLean, Virginia, 22102.

3. Capital One furnishes information to credit reporting agencies as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

## STATEMENT OF FACTS

5. Plaintiff Delbert Kevin Cordle resides in the City of Oak Hill, Fayette County, WV.

6. In the summer of 2023, Plaintiff began receiving debt collection communications from LVNV Funding LLC for a WebBank/Fingerhut account.

7. Plaintiff never opened an account with WebBank/Fingerhut.

8. Upon reviewing his credit disclosure, Plaintiff identified multiple accounts that did not belong to him that were being reported on his disclosure.

9. Plaintiff identified a 'hard inquiry' on his credit report from Capital One in June 2023.

10. The plaintiff contacted the Capital One address in Utah to inform the bank that he had not applied for credit.

11. Capital One assured Plaintiff that it would mark the account.

12. Plaintiff prepared an identity theft affidavit in June 2023.

13. Nonetheless, Capital One opened the account and thereafter reported its status to the credit reporting agencies.

14. Plaintiff disputed these false tradelines by mailing letters to Experian, Equifax, and TransUnion in June 2023.

15. Experian and Trans Union did not correct Plaintiff's credit disclosure.

16. Instead, the credit reporting agencies confirmed that Plaintiff owed these accounts that did not belong to him from Capital One, LVNV/Resurgent, and WebBank/Fingerhut.

17. The credit reporting agencies showed multiple inaccuracies on Plaintiff's credit report.

18. The credit reporting agencies reported numerous inaccuracies related to Plaintiff's accounts, aliases, and inquiries from creditors.

19. Experian reported that Plaintiff had two social security numbers on its July 11, 2023 credit disclosure.

20. Despite this internally conflicting information, Defendant never undertook any steps to investigate, identify, or correct possible inaccuracies in its reporting on Plaintiff's credit following his dispute.

21. These derogatory and mismatched sets of credit information severely reduce Plaintiff's credit score.

22. Plaintiff attempted to file a police report in July 2023 but was told the local police do not take reports on cyber crimes without more specific information.

23. Plaintiff did not have more specific information because he did not open the accounts.

24. In or around November 2023, Plaintiff sent a second dispute letter to the credit reporting agencies, asking them to investigate and correct his account.

25. On December 16, 2023, Trans Union confirmed again that Plaintiff owed an account to Capital One and to LVNV Funding LLC that he never opened.

26. On December 29, 2023, Experian confirmed again that Plaintiff owed an account to Capital One and to LVNV Funding LLC that he never opened.

27. Plaintiff was never contacted by Experian during the investigation of either written dispute.

28. Plaintiff was never contacted by Trans Union during the investigation of either written dispute.

29. In an attempt to speak directly with a dispute operator, Plaintiff placed a telephone call to Experian on March 1, 2024 at 11:40am and spoke to Cheryl.

30. In an attempt to speak directly with a dispute operator, Plaintiff placed a telephone call to Trans Union on February 12, 2024.

31. Experian refused to discuss his dispute over the telephone.

32. Trans Union refused to discuss his dispute over the telephone.

33. In March 2024, Defendant PRA began contacting Plaintiff in an attempt to collect an account it purchased from Capital One.

34. Despite knowing that Plaintiff did not open the account and that Plaintiff disputed the account, Capital One sold the account to a third party debt collector.

35. Plaintiff disputed this account directly with PRA.

36. In May 2024, Plaintiff sent yet another dispute letter to Trans Union.

37. In May 2024, Plaintiff sent yet another dispute letter to Experian.

38. Rather than investigating and confirming that Plaintiff did not owe the account, PRA merely offered to report the account as disputed on Plaintiff's credit reports via a letter dated August 10, 2024.

39. Experian responded in August 2024, refusing to place an identity theft block on Plaintiff's credit report.

40. Experian responded thereafter by verifying that Plaintiff owed PRA for the Capital One debt.

41. Trans Union responded in August 2024 by verifying the LVNV account.

42. PRA continued to attempt to collect the debt form Plaintiff.

### **Capital One willfully violated the FCRA**

43. Capital One was required under the FCRA and had notice from the Fourth Circuit Court of Appeals that a "reasonable investigation" requires Capital One to conduct a substantive inquiry "to determine whether the disputed information can be verified." *Johnson v. MBNA Am. Bank*, 357 F.3d 426, 431 (4th Cir. 2004).

44. A furnisher may not limit its investigation to only that information supplied by the CRA and must also consider other information available to it, including earlier complaints or other communications received from the consumer before reinvestigation was even begun. *Saunders v. Branch Banking and Trust Co. Of VA*, 526 F.3d 142 (4th Cir. 2008).

45. Capital One and other credit furnishers have had notice of the "reasonable investigation" requirements in the Fourth Circuit since 2004 – over 20 years.

46. Punitive damage awards for failure to conduct reasonable investigations of disputes abound. *See Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 262 (4th Cir. 2017) (reducing $2.5 million verdict to $600,000, otherwise upholding J. Berger); *Brim v. Midland*

*Credit Mgmt.*, 795 F. Supp. 2d 1255 (N.D. Ala. 2011) (Jury's actual damages award of $100,000 and punitive damages award of $623,180 against debt buyer/furnisher were not excessive); *Drew v. Equifax Info. Serv., L.L.C.*, 2010 WL 5022466 (N.D. Cal. Dec. 3, 2010) (Jury in failure to adequately reinvestigate case awarded plaintiff $315,000 in non-economic compensatory damages, $6,326.69 in economic damages, and $700,000 in punitive damages); *Miller v. Equifax Info. Serv., L.L.C.*, 2014 WL 2123560 (D. Or. May 20, 2014) (jury verdict for $180,000 compensatory and punitive damages of $18 million reduced to $1,620,000).

47. Capital One's failure to reasonably investigate Plaintiff's two separate disputes received from credit reporting agencies, after receiving a direct dispute from Plaintiff prior to those disputes, demonstrates a willful violation of the FCRA.

## **Damage**

48. Defendant failed and refused to perform a meaningful and searching inquiry into the substance of Plaintiff's dispute and to accurately report Plaintiff's credit line relating to his credit.

49. After sending its Investigation Results to Plaintiff, Defendant continued to report inaccurate tradelines that were published to third-parties about Plaintiff that contained the inaccurate derogatory credit information.

50. As the result of Defendant's conduct, Plaintiff has suffered loss of credit; loss of the ability to purchase and benefit from credit; increased insurance rates; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

51. Due to the inaccurate credit reporting, Plaintiff has denied the opportunity to finance a boat in 2022 due to the inaccurate information, higher insurance rates, and avoided credit opportunities, such as refinancing his truck, due to the likelihood of higher interest rates.

52. Plaintiff attempted to purchase a vehicle in September 2024 but was rejected by Chase Bank on the terms he sought after Chase Bank reviewed his Experian profile.

53. Chase Bank only offered an excessive interest rate and shorter payment term that nearly doubled the advertised offer at the dealership.

54. Plaintiff was denied credit by Peoples Bank after it reviewed his Trans Union profile.

**COUNT ONE:**
**COUNT I – VIOLATION OF FAIR CREDIT REPORTING ACT**

46. Plaintiff incorporates the preceding paragraphs by reference.

47. Capital One repeatedly violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

48. Capital One received notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by Capital One to the credit reporting agencies.

49. Capital One failed to conduct a reasonable investigation with respect to the disputed information.

50. As a result of this conduct, action and inaction of Capital One, Plaintiff suffered actual damages including without limitation, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

51. Capital One's conduct, action and inactions were and continue to be willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Capital One has been negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

**COUNT II – VIOLATION OF FAIR CREDIT REPORTING ACT**

52. Plaintiff incorporates the preceding paragraphs by reference.

53. On one or more occasions, Capital One violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

54. Capital One received notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by Capital One to the credit reporting agencies.

55. Capital One failed to review all relevant information provided by the credit reporting agencies pursuant to section 1681i(a)(2) of this title.

56. As a result of this conduct, action and inaction of Capital One, Plaintiff suffered actual damages including without limitation, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

57. Capital One's conduct, action and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Capital One was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

### COUNT III –VIOLATIONS OF THE WVCCPA

58. Plaintiff incorporates the preceding paragraphs by reference.

59. The Plaintiff is a "person" who falls under the protection of Article 2 of the West Virginia Consumer Credit and Protection Act (herein "WVCCPA") and is entitled to the remedies set forth in Article 5 of the WVCCPA.

60. The Defendant, Capital One, is a debt collector as defined by West Virginia Code §46A-2-122(d) engaging directly or indirectly in debt collection as defined by West Virginia Code §46A-2-122(c) within the State of West Virginia.

61. The Defendant has engaged in repeated violations of Article 2 of the West Virginia Consumer Credit and Protection Act, including but not limited to,

    a. using unfair or unconscionable means to collect a debt from Plaintiff in violation of West Virginia Code §46A-2-128;

    b. collecting or attempting to collect collection fees or charges, in violation of West Virginia Code §46A-2-128(c);

    c. utilizing fraudulent, deceptive or misleading representations or means regarding Plaintiff's account status in an attempt to collect a debt or obtain information regarding Plaintiff in violation of West Virginia Code §46A-2-127.

62. As a result of the Defendant's actions, Plaintiff has suffered actual and/or statutory damages.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

        **Plaintiff,**
        **DELBERT KEVIN CORDLE,**
        **By Counsel,**

/s/ Benjamin M. Sheridan
Benjamin M. Sheridan (# 11296)
    ben@kleinsheridan.com
Jed R. Nolan (#10833)
    jed@kleinsheridan.com
Counsel for Plaintiffs
Klein & Sheridan, LC
3566 Teays Valley Road
Hurricane, WV 25526
(304) 562-7111